1        UNITED STATES DISTRICT COURT

2            DISTRICT OF IDAHO

3                --oOo--

4


5   UNITED STATES OF AMERICA,        )
                                     )
6           Plaintiff,               ) U.S. District Court
                                     ) No. 2:15-cr-0268-BLW-1
7   vs.                              )
                                     )
8   CRUZ FLECHITA RAMON SOTO,        )
                                     ) U.S. Court of Appeals
9           Defendant.               ) No. 16-30236
    _____ )
10


11              CHANGE OF PLEA HEARING

12                 July 29, 2016


13

    BEFORE:   THE HONORABLE B. LYNN WINMILL
14


15  APPEARANCES:
        For the United States of America:
16            CATHERINE HOLM
              U.S. ATTORNEY'S OFFICE
17            6450 N. Mineral Drive, Suite 210
              Coeur d'Alene, Idaho 83815
18
        For the Defendant:
19            ROBERT R. FISCHER
              FEDERAL DEFENDER'S OFFICE
20            10 N Post Street, Suite 700
              Spokane, WA 99201
21


22


23


24


25


                        1

1                     REPORTER'S INDEX

2   PROCEEDINGS:                                    PAGE

3   July 29, 2016 -

4        Change of Plea................................. 3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   July 29, 2016                      Coeur d'Alene, Idaho
 2                    P R O C E E D I N G S
 3                        --oOo--
 4
 5          THE CLERK:  All rise.  The United States
 6   District Court for the District of Idaho is now in
 7   session.  The Honorable B. Lynn Winmill presiding.
 8          THE COURT:  Thank you.  Please be seated.
 9          THE CLERK:  The Court will now hear United
10   States of America versus Cruz Flechita Ramon Soto.  Case
11   No. 15-cr-268 for change of plea.
12          Counsel, beginning with the Government, please
13   state your appearances.
14          MS. HOLM:  Catherine Holm for the Government.
15          MR. FISCHER:  Bob Fischer behalf of Mr. Cruz
16   Soto.
17          THE COURT:  All right.  Thank you, counsel.
18   The Court has received a copy of a Rule 11 plea
19   agreement in which the defendant's agreed to plead, I
20   believe, it's Counts I and III of the indictment,
21   charging the defendant with assault resulting in serious
22   bodily injury and using a firearm during and in relation
23   to a crime of violence.
24          Before the Court can accept the defendant's
25   plea of guilty, I need to place you under oath and ask
```

1    you a number of questions to ensure that your plea is

2    valid.  First, Mr. Soto, just to confirm that is your

3    intention, sir, to plead guilty as agreed to in the plea

4    agreement?

5              THE DEFENDANT:  Yes.

6              THE COURT:  All right.  If you'll please

7    stand.  Ms. Parson will place you under oath.

8              (Witness sworn.)

9              THE COURT:  Mr. Soto, do you understand that

10   having been sworn that -- or having been placed under

11   oath that if you do not answer my questions truthfully

12   you could be prosecuted for perjury?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  I'm going to ask you first a

15   series of personal questions to determine your

16   competence.  How old are you?

17             THE DEFENDANT:  Thirty-four.

18             THE COURT:  How far did you go in school?

19             THE DEFENDANT:  Eleventh grade.

20             THE COURT:  You're able to read, write and

21   understand the English language without difficulty then?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Have you taken any drugs, medicine

24   or pills including prescribed medication or consumed any

25   alcohol in the past 48 hours?

1           THE DEFENDANT:  No.

2           THE COURT:  Can you tell me what step you are

3    going to take in your case here today?

4           THE DEFENDANT:  Plead guilty.

5           THE COURT:  All right.  Mr. Fischer, do you

6    have any doubt as to your client's competence to enter a

7    plea?

8           MR. FISCHER:  I don't, your Honor.

9           May I talk to my client for one minute.

10          THE COURT:  You may.

11          THE DEFENDANT:  Yeah, I got a GED.

12          THE COURT:  I'm sorry?

13          THE DEFENDANT:  I got a GED.

14          THE COURT:  All right.  Now getting back to, I

15   think, Mr. Fischer, you said you have no doubt to your

16   client's competence?

17          MR. FISCHER:  I do not, your Honor.

18          THE COURT:  All right.  The Court will find

19   Mr. Soto is competent to enter a plea today based on our

20   exchange here, my observations of him, and the

21   assurances of counsel.

22          Mr. Soto, have you had adequate time to

23   discuss your case with your attorney?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  And are you satisfied with the

1    representation that he has provided you?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Have you discussed the sentencing

4    guidelines with your attorney?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Under the sentencing guidelines,

7    the Court will establish an offense level based upon the

8    seriousness of the offense and a criminal history

9    category based upon the extent of your prior criminal

10   record.  Those two numbers, the offense level and the

11   criminal history category, will then be used to

12   determine an advisory guideline range.  It is advisory

13   in the sense that it must only be considered along with

14   a number of other factors in fashioning a reasonable

15   sentence.

16             Do you understand this?

17             THE DEFENDANT:  Yes.

18             THE COURT:  In determining the offense level,

19   I will take into account all facts related to your

20   criminal conduct.  This may include matters not charged

21   by the Government in the crime to which you're pleading

22   guilty and may even include matters charged which

23   presumably will be dismissed pursuant to the parties'

24   plea agreement.

25             Do you understand?

6

1          THE DEFENDANT:  Yes.

2          THE COURT:  In determining your criminal

3  history category, I will consider the full extent of

4  your prior criminal record and your involvement with the

5  criminal justice system.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Since this is a crime of violence,

9  I would also advise you that if you have two prior

10 felony convictions of either a crime of violence or a

11 drug trafficking offense, you could be sentenced as a

12 career offender which could greatly enhance the

13 guideline range and the punishment you receive.

14         Do you understand this?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Once the guideline range has been

17 established, the guidelines themselves provide that if

18 your case is extraordinary in particular ways, the Court

19 may depart from the guideline range and impose a

20 sentence above and below the guideline range.

21         Do you understand?

22         THE DEFENDANT:  Yes.

23         THE COURT:  For example, the guidelines

24 specifically authorize the Court to depart downwards if

25 a defendant provides substantial assistance to the

1    Government in their investigation of this or other

2    criminal activity.

3            Do you understand this?

4            THE DEFENDANT:  Yes.

5            THE COURT:  In addition, the guidelines are

6    only advisory.  The Court is only required to consider

7    them along with other statutory sentencing factors in

8    arriving at a reasonable sentence.  Nevertheless, I

9    advise all defendants that statistically most sentences

10   still fall within the guideline range; therefore, the

11   calculation of the guidelines is an important

12   consideration at sentencing.

13           Do you understand this?

14           THE DEFENDANT:  Yes.

15           THE COURT:  In Federal Court there is no

16   parole.  What that means is that if the Court were to

17   impose a prison sentence, you would serve the entire

18   sentence ordered by the Court.  The only reduction would

19   be good time credit that an individual earns while

20   incarcerated.

21           Do you understand this?

22           THE DEFENDANT:  Yes, I do.

23           THE COURT:  I'm now going to explain to you

24   the rights afforded to all criminal defendants.  Listen

25   carefully.  If you have any questions, you need to speak

1   up and I will stop and take whatever time is necessary

2   to ensure that you fully understand.

3           I go through this in great detail because when

4   you plead guilty, you waive these rights.  So it's

5   critical that you understand what it is you're giving up

6   when you plead guilty.

7           First, you have the right to maintain your

8   plea of not guilty and proceed to a trial by jury on the

9   charges contained in the indictment.  At that trial, you

10  would be presumed to be innocent and the Government

11  would be required to prove you guilty by competent

12  evidence and beyond a reasonable doubt before you could

13  be found guilty.

14          You would never have to prove your own

15  innocence.  Do you understand this?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You would also have the right to

18  be represented by counsel at trial and if you could not

19  afford to retain counsel, counsel would be appointed to

20  represent you at the trial in this matter, or more

21  likely Mr. Fischer would be appointed to represent you

22  throughout the proceedings.

23          If you wish to call witnesses on your behalf,

24  your attorney can arrange for that and the cost of the

25  process involved in bringing those witnesses to appear

1    on your behalf would be paid for you.

2            At trial, the Government would be required to

3    present witnesses who must testify in your presence and

4    be subject to cross-examination by your attorney thereby

5    affording you the right to confront your accuser.  Your

6    attorney could also object to any evidence offered by

7    the Government and could offer evidence on your behalf.

8            Do you understand these things?

9            THE DEFENDANT:  Yes.

10           THE COURT:  At trial you would have the right

11   to testify if you chose to do so, but you would also

12   have the right not to testify.  And if you chose not to

13   testify, the jury would be instructed that they must not

14   and cannot draw any inference or even a suggestion of

15   guilt from the fact that you chose not to testify.  The

16   right not to testify is part of a privilege against

17   self-incrimination.  That privilege is also waived when

18   you plead guilty because you will have to acknowledge

19   that you, in fact, committed the crime with which you

20   have been charged and to which you intend to plead

21   guilty.

22           Do you understand these things?

23           THE DEFENDANT:  Yes.

24           THE COURT:  If convicted following the trial,

25   you would have the right to appeal that conviction and

1    to have an attorney appointed to represent you on

2    appeal.

3             Do you understand this right?

4             THE DEFENDANT:  Yes.

5             THE COURT:  Do you have any questions about

6    any of the rights that I've described for you here this

7    morning?

8             THE DEFENDANT:  I don't.

9             THE COURT:  All right.  If you plead guilty,

10   you will waive your right to a jury trial and the other

11   rights that I've just discussed.  There will be no trial

12   and I will sentence you on the basis of your guilty plea

13   as though you had stood trial and been convicted of

14   Counts I and III.

15            Do you understand this?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Having heard this description of

18   your rights, do you still wish to plead guilty and waive

19   each of these rights?

20            THE DEFENDANT:  Yes, I do.

21            THE COURT:  Have you received a copy of the

22   indictment?

23            THE DEFENDANT:  I did.

24            THE COURT:  Have you read it?

25            THE DEFENDANT:  Yes.

1              THE COURT:  Have you gone over the charges

2      with your attorney?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you feel you understand the

5      charges?

6              THE DEFENDANT:  I do.

7              THE COURT:  The maximum possible penalty under

8      the indictment as follows -- I'm going to go from memory

9      but I think I know what it is.

10             As to Count I it's a maximum sentence of ten

11     years incarceration up to, I think, it's three years

12     supervised release.  A special assessment of $100.  I

13     think that covers it.

14             As to Count III, that is quite different.  It

15     is a minimum sentence of ten years incarceration and it

16     must be served consecutively to any sentence imposed on

17     Count I and I believe the maximum is up to life.

18     Actually, let me check that.  That's correct.  In

19     addition, the term of supervised release would be not

20     more than five years on Count III and there would be a

21     maximum fine of $250,000 and a special assessment of

22     $100.  On Count I, I think I forgot to mention there's

23     also a maximum fine of $250,000.

24             Do you understand this?

25             THE DEFENDANT:  Yeah.

1              THE COURT:  Do you have any questions about

2       the sentence that could be imposed?

3              THE DEFENDANT:  I don't.

4              THE COURT:  All right.  As I noted on

5       Count III, the Court must impose a mandatory minimum

6       sentence of ten years to run consecutive to any sentence

7       imposed on Count I.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand, in addition,

11      that whatever sentence is imposed in this case could run

12      consecutive to any sentence which has been or may yet be

13      imposed in any State or Federal case?

14             THE DEFENDANT:  Yes.

15             THE COURT:  You understand that a sentence of

16      probation is not available?

17             THE DEFENDANT:  Uh, yeah.

18             THE COURT:  Do you understand that you may be

19      ordered to pay restitution to any victim in this case?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Is there any forfeiture count in

22      this matter, Miss Hall?

23             MS. HALL:  Yes, isn't it the --

24             THE COURT:  With regard to firearms?

25             MS. HALL:  With the firearm.

1          THE COURT:  All right.  You understand then,

2   Mr. Soto, that you may be required to forfeit certain

3   property to the Government?

4          THE DEFENDANT:  Yeah.

5          THE COURT:  Do you understand that you are

6   pleading guilty to a felony offense?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, as such, you will be deprived

9   of certain rights, including the right to vote, the

10  right to hold public office, the right to serve on a

11  jury and the right to possess any kind of firearm.

12          Do you understand that?

13          THE DEFENDANT:  Yeah.

14          THE COURT:  And, moreover, I also advise

15  defendants that unlike State Court, when you lose those

16  civil rights after a federal conviction it's generally a

17  lifetime ban and those rights cannot be reinstated.

18          Do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  After you have served whatever

21  sentence of incarceration that the Court may impose, you

22  will be placed on supervised release for a term of up to

23  three years on Count I and up to five years on

24  Count III.  During that period of time you will be

25  required to comply with conditions imposed by the Court

1    and the probation office.  Your failure to comply with

2    those conditions will result in your being sentenced to

3    a further term of incarceration.

4              Do you understand?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Ms. Holm, would you set forth the

7    elements of the offense and what the evidence would show

8    if this matter were to proceed to trial?

9              MS. HOLM:  Yes.  The element of the crime of

10   assault resulting in serious bodily injury, a violation

11   of 18 U.S.C. Sections 113(a)(6) and 1153 as charged in

12   Count I are as follows:

13             The defendant was an Indian enrolled in a

14   federally recognized tribe.  The defendant intentionally

15   wounded the victim.  As a result, the victim suffered

16   serious bodily injury.  And the event occurred within

17   the boundaries of the Coeur d'Alene Indian Reservation.

18             For the elements of the crime of using a

19   firearm during and in relation to a crime of violence, a

20   violation of 18 U.S.C. Sections 924(c)(1)(a) as charged

21   in Count III are as follows:

22             The defendant committed the crime of assault

23   resulting in serious bodily injury as charged in Count I

24   of the superseding indictment.  A crime of violence

25   under 18 U.S.C. 924(c)(3)(a) and the defendant knowingly

1    possessed and discharged a firearm during and in

2    relation to that crime.

3         If this matter were to proceed to trial, the

4    Government and the defendant agree the following facts

5    would be proven beyond a reasonable doubt:

6         In the early morning of November 12th, 2015,

7    while the victim JS, an Indian, was sleeping in the

8    living room of a house.  The defendant, an Indian, came

9    to his house.  Soto and JS spoke for about 20 minutes,

10   then Soto shot JS in the chest, back and neck.  JS was

11   life-flighted to Kootenai hospital where he was -- where

12   he was stabilized and flown to Harbor View Medical

13   Center in Seattle.  While at Kootenai hospital, JS

14   identified Cruz Soto as the shooter.  JS is now

15   paralyzed from the neck down.

16        One bullet and three shell casings were

17   recovered from the scene of the shooting.  These casings

18   were from bullets, which had been fired by Soto from the

19   Kel-Tech 9-millimeter pistol, Serial No. SHD54.  Soto

20   hid the Kel-Tech 9 pistol, which was found in a heating

21   vent at his aunt's house.  Law enforcement found the

22   firearm and confirmed with Soto's aunt that Soto

23   admitted shooting JS.

24        These events all occurred within the

25   boundaries of the Coeur d'Alene Indian Reservation.

```
 1              THE COURT:  All right.  Thank you.

 2              MR. FISCHER:  Your Honor, if I may.

 3              THE COURT:  Yes.

 4              MR. FISCHER:  During the recitation of the

 5   factual basis to which we agreed in the plea agreement,

 6   it just came to my attention that -- and this is maybe a

 7   small matter, but I'm thinking the prosecution would

 8   allow this.  But it -- it reads that in the early

 9   morning of November 12th, 2015, while the victim JS, an

10   Indian, was sleeping in the living room of a house, the

11   defendant Cruz Flechita Ramon Soto, an Indian, came to

12   his house.  It should be "the" house.

13              THE COURT:  It was not the victim's house?

14              MR. FISCHER:  It was not the victim's house.

15              MS. HOLM:  That is correct, your Honor.

16              THE COURT:  All right.  Can we amend that by

17   interlineation?

18              MR. FISCHER:  Yes.

19              THE COURT:  All right.  It's agreed by all?

20              MS. HOLM:  Yes, your Honor.

21              THE COURT:  Okay.  And the defense agrees?

22              MR. FISCHER:  Yes, your Honor.

23              THE COURT:  All right.  Mr. Soto, do you agree

24   with Ms. Holm's summary of what you did?

25              THE DEFENDANT:  Yes.
```

17

 1                     THE CLERK:  All right.  You are, in fact, an

 2     Indian enrolled in a federally recognized tribe?

 3                     THE DEFENDANT:  Yes.

 4                     THE COURT:  Which tribe is that?

 5                     THE DEFENDANT:  The Coeur d'Alene Tribe.

 6                     THE COURT:  Do you agree that you

 7     intentionally wounded the victim in this matter?

 8                     THE DEFENDANT:  Yes.

 9                     THE COURT:  Can you just in your own words

10     very briefly describe how you wounded him?

11                     THE DEFENDANT:  I shot him.

12                     THE COURT:  Okay.  And you agree that the

13     victim suffered serious bodily injury?

14                     THE DEFENDANT:  Yes.

15                     THE COURT:  And what is the injuries that you

16     understand he suffered from?

17                     THE DEFENDANT:  He's injured from the neck

18     down for the rest of his life.

19                     THE COURT:  Okay.  And you agree that these

20     events occurred within the boundaries of the Coeur

21     d'Alene Reservation?

22                     THE DEFENDANT:  Yes.

23                     THE COURT:  Can you describe just in some

24     fashion where the events took place?

25                     THE DEFENDANT:  At my aunt's house in Plummer,

1    Idaho.

2            THE COURT:  And that is within the boundaries

3    of the Coeur d'Alene Reservation?

4            THE DEFENDANT:  Yes.

5            THE COURT:  You agree that you committed this

6    offense and in doing so you possessed and discharged a

7    firearm?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And that was involved in the

10   shooting you described?

11           THE DEFENDANT:  Yes.

12           THE COURT:  All right.  Ms. Holm, are you

13   satisfied with the defendant's allocution?

14           MS. HOLM:  Yes, your Honor.

15           THE COURT:  Mr. Soto, has anyone threatened

16   you or anyone else or forced you in any way to get you

17   to plead guilty?

18           THE DEFENDANT:  No.

19           THE COURT:  You signed a plea agreement with

20   the Government; is that correct?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you have a copy there?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Would you turn to, actually the

25   last page, page 14, and tell me is that your signature

1   at the top of the page?

2          THE DEFENDANT:  Yes, it is.

3          THE COURT:  And did you, in fact, sign this on

4   July 11th, 2016, as indicated?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Prior to signing the plea

7   agreement, did you read each provision of the plea

8   agreement?

9          THE DEFENDANT:  I did.

10          THE COURT:  Did you go over each provision of

11   the plea agreement with your attorney before you signed

12   it?

13          THE DEFENDANT:  Yeah, I did.

14          THE COURT:  And did he answer any questions

15   you may have had?

16          THE DEFENDANT:  Yes, he did.

17          THE COURT:  And are you satisfied that you

18   fully and completely understood each provision of the

19   plea agreement before you signed it?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that the plea

22   agreement included a provision in which you waived or

23   gave up some or all of your rights to appeal the

24   conviction and sentence or to pursue habeas corpus

25   relief?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Has anyone made any promise to you

3    other than those made in the plea agreement that induced

4    you to plead guilty?

5          THE DEFENDANT:  No.

6          THE COURT:  The plea agreement you signed

7    contain two important provisions.  The first calls for

8    the Government to move to dismiss the remaining counts

9    in this case.  If you plead guilty today, I will examine

10   the presentence report after it has been prepared and

11   decide whether or not to accept the plea agreement and

12   dismiss those counts.  I am required not to accept a

13   plea agreement that calls for the dismissal of counts if

14   I feel that the counts to which you are pleading guilty

15   do not adequately address the totality of your criminal

16   conduct.

17          However, if I do reject the plea agreement, I

18   will notify you of this at or before the time of

19   sentencing and provide you with the opportunity to

20   withdraw your plea of guilty in which case you would

21   stand trial on all counts in the indictment.

22          Do you understand?

23          THE DEFENDANT:  Yes.

24          THE COURT:  The second provision calls for the

25   Government to make certain recommendations on your

1   behalf at the time of sentencing.  However, the Court is

2   not required to accept or be bound by those

3   recommendations.  I may reject it and impose a sentence

4   that is longer than that requested by the Government.

5              Likewise, as we've already discussed, the

6   Court has the authority to depart or vary from the

7   guidelines and impose a sentence that is longer or

8   shorter than that called for by the guidelines.

9              However, if the sentence is longer than that

10  called for by the guidelines, you will not have the

11  opportunity to withdraw your plea even if the sentence,

12  again, is longer than what the Government recommends and

13  longer than what the guidelines call for.

14             Do you understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  If -- all right.  Has anyone made

17  any prediction or promise to you as to what your

18  sentence will be?

19             THE DEFENDANT:  No.

20             THE COURT:  And, Mr. Fischer, are you

21  satisfied that your client's plea of guilty would be a

22  knowledgeable and voluntary plea?

23             MR. FISCHER:  I am, your Honor.

24             THE COURT:  At this time, Mr. Soto, I'll call

25  upon you to state your plea to Counts I and III.  As to

1   Count I charging you with assault resulting in serious

2   bodily injury, what is your plea?

3           THE DEFENDANT:  Guilty.

4           THE COURT:  And as to Count III charging you

5   with using a firearm during and in relation to a crime

6   of violence, what is your plea?

7           THE DEFENDANT:  Guilty.

8           THE COURT:  I'm going to find that your plea

9   of guilty to Counts I and III of the indictment is a

10  knowing and voluntary plea supported by an independent

11  basis in fact containing all of the essential elements

12  of the offense.  I will accept your plea and enter a

13  judgment of guilty as to the crimes charged in Counts I

14  and III, but will take under advisement the decision

15  whether to accept the terms of the plea agreement

16  pending my review of the presentence report.

17          I will order a presentence investigation

18  report.  The report will be due by September 6th, 2016.

19  Counsel and the defendant will have 14 days, or until

20  September 20th, 2016, to file with the Court any

21  objections they have -- or rather file any objections

22  they have, which must be in writing, and if those

23  objections are not filed in writing within that 14-day

24  period, the right to object will be deemed to have been

25  waived.

1          The probation office will then prepare its

2     final report and submit it to Court and counsel on

3     October 4th, 2016, and the sentencing will be scheduled

4     for October 11th, 2016, at 1:30 p.m.

5          I assume the Government seeks to detain the

6     defendant pending sentencing in this matter?

7          MS. HOLM:  Yes, your Honor.

8          THE COURT:  Mr. Fischer, do you wish to be

9     heard?

10          MR. FISCHER:  No, your Honor.

11          THE COURT:  All right.  Given the nature of

12     the charges, Mr. Soto, there's essentially no

13     possibility the Court could order your release.

14     Moreover -- and I will note that I could not find by

15     clear and convincing evidence that the defendant does

16     not pose a risk of flight or danger to the community,

17     but I will assure you that it is my practice to

18     recommend to the Bureau of Prisons, and I think they

19     always follow that recommendation, to give you credit

20     for any time you've served while awaiting trial and

21     sentencing.

22          I would note, counsel, that we normally

23     schedule sentencings on the assumption they will not

24     take more than about 45 minutes.  If there is going to

25     be more time necessary, for whatever reason, please

1   notify the clerk, either Ms. Bracke in Boise or

2   Ms. Parson here, so that we can adjust the schedule to

3   make sure that we give you enough time to present your

4   sentencing materials.

5           All right.  Is there anything else, counsel?

6           MS. HOLM:  No, your Honor.  Thank you.

7           THE COURT:  Mr. Fischer?

8           MR. FISCHER:  No, your Honor.  Thank you.

9           THE COURT:  All right.  We'll be in recess.

10          THE CLERK:  All rise.  Court is adjourned.

11          (Matter adjourned.)

12          (End of audio file.)

13                       --oOo--

14      I, Valerie Nunemacher, certify that the foregoing

15  pages are a true and correct transcription of the

16  audiotaped proceedings to the best of my ability, except

17  where noted "unintelligible" or "inaudible."

18

19

20  _____

21          Valerie Nunemacher, CSR, CCR, RPR

22

23

24

25